UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DENNIS CLARK,

    Plaintiff,

v.

SHADE TREE SERVICE CO.,

    Defendant.

Case No. 09-cv-528-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Shade Tree Service Company's ("Shade Tree") motion for summary judgment (Doc. 27). Plaintiff Dennis Clark has responded to the motion (Doc. 32), and Shade Tree has replied to that response (Doc. 33).

**I.**      **Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.  Facts

Viewed in the light most favorable to Clark, the evidence establishes the following relevant facts.[1]

Clark began working for Shade Tree as a tree trimmer in October 1999. That job involved operating heavy equipment, climbing trees and ladders, using a chainsaw, operating near high-voltage power lines and driving trucks and other heavy vehicles. Clark was a good worker, and in 2002 he was promoted to foreman of a two-person work team.

In the summer of 2007, Clark accidentally cut himself with a chain saw while at work. He filed a workers' compensation claim, and all his medical bills for that injury were paid. There is no evidence Shade Tree took any adverse action against Clark for filing a claim,

---

[1] The parties cite a number of documents Shade Tree did not know about until discovery. Because those documents were not considered in Shade Tree's decision to terminate Clark, they are not relevant to the pending motion.

although two supervisors had indicated earlier to Clark that Shade Tree did not allow workers who filed workers' compensation claims to return to work.

A few months later, on August 23, 2007, an extremely hot day, while driving a truck for Shade Tree, Clark blacked out and wrecked the truck. He regained consciousness shortly after the wreck, refused medical treatment at the scene of the accident and said he felt fine. That same day, Shade Tree's performance manager, Kurt Elsesser, discussed the situation with Shade Tree's director of operations, Jeffrey Baker, who decided that Clark would not be allowed to return to work until he provided a doctor's written assurance that he would not continue to lose consciousness at work. This instruction was pursuant to a safety policy Shade Tree had adopted in 2004 after another employee had blacked out at work. Later that day, Elsesser told Clark he would not be allowed to return to work until he got a check-up from a doctor and got a clean bill of health.

On August 27, 2007, Clark saw Dr. Kenneth Retter, a cardiologist. In a note dated September 10, 2007, that was faxed to Shade Tree, Dr. Retter indicated he had diagnosed Clark with syncopal episodes over a four-year period due to overheating and dehydration. The note further indicated Clark could return to work September 28, 2007. Baker did not find the note sufficient to allow Clark back to work.

On September 10, 2007, while Clark was still off work, he completed a workers' compensation claim form seeking benefits for a cardiovascular injury. The following day Clark's counsel sent a copy of the application for workers' compensation benefits to Shade Tree. No evidence suggests Baker got notice of the claim at this time.

On September 19, 2007, Clark saw Dr. Teppen, an internal medicine specialist. Dr. Teppen also found Clark fit to return to work as long as he kept hydrated. He instructed Clark to

lie down if he started feeling lightheaded or dizzy.  It is unclear from the record what documentation, if any, Shade Tree received from Dr. Teppen.

On September 27, 2007, Clark saw Dr. Lee, a neurologist, who did not believe Clark's syncopal attacks were due to epilepsy.  Clark did not provide Shade Tree with a report from Dr. Lee.

In a letter dated September 28, 2007, Dr. Retter again attributed Clark's syncopal episodes to heat stress and said, among other things:

> It has been brought to my attention that you have concerns about Dennis L. Clark returning to work.  The company wants a 100% guarantee that this [Clark's blacking out] will never happen again.  Please remember that medicine is a science, but not an exact science.  I cannot in good conscience, say that nothing will ever happen to anyone at any time.  I do feel that if certain OSHA regulations regarding heat stress are followed, this should eliminate his problem. . . .  I believe that anyone at anytime could have these symptoms in extreme heat without proper breaks and hydration.. If you do not give your employees proper breaks and hydration, we recommend you do so.  He may be the first you have seen but he will not be the last. . . .
>
> . . . You are concerned he will [black out] over power lines with a chainsaw in hand, but it usually affects victims who are standing still or sitting, they feel it coming on and if they lie down it will resolve.  Moving around, rather than standing or sitting, will reduce the possibility of fainting.  This is why he has never done this while using his chainsaw; he has been too active.  All incidents have been while he has been sitting, and in extreme heat.

Dr. Retter noted that all tests Clark had had were negative and that, after seeing Dr. Lee, Clark "should be released to return to work on October 1, 2007, without restrictions, except to keep hydrated in extreme heat and/or decrease the number of hours on each day."  Baker did not consider Dr. Retter's letter as an unrestricted release in light of his recommendation regarding reduced work hours.  In his view, the ability to work a full day in extreme weather conditions was an essential job function, although on occasion workers were allowed to stop work early in extreme heat.  Baker refused to allow Clark to return to work on October 1, 2007.

4

Baker did not learn about Clark's workers' compensation claim until Clark filed a retaliatory discharge grievance under the applicable collective bargaining agreement after Shade Tree refused to allow him to return to work on October 1, 2007. That occurred sometime between October 1, 2007, the day he was medically cleared but not allowed to return to work, and October 4, 2007, the day he amended his grievance to add more charges.

In July 2009, Clark filed this lawsuit claiming Shade Tree discharged him in retaliation for filing a workers' compensation claim in September 2007. He seeks compensatory and punitive damages. Shade Tree now asks for summary judgment on the grounds that Clark cannot establish his exercising his workers' compensation rights caused Shade Tree not to allow him to come back to work. It says it did not allow Clark to return to work because it did not receive adequate assurances he would not pass out again and that, without such assurances, Clark posed an unacceptable safety risk to himself and others. Clark questions Shade Tree's concern with safety in light of another of its allegedly unsafe practices.

**III.    Analysis**

Illinois law forbids an employer to retaliate against an employee because he filed a claim under the Workers' Compensation Act, 820 ILCS 305/1 *et seq*. *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 357 (Ill. 1978). In order to prevail on a workers' compensation retaliatory discharge claim under Illinois law, a plaintiff must ultimately show that he:

> (1) was the defendant's employee before his or her injury; (2) exercised a right granted by the Workers' Compensation Act; and (3) was discharged from his or her employment with a causal connection to his or her filing a workers' compensation claim.

*Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1062 (7th Cir. 2001); *accord Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998); *McCoy v. Maytag*, 495 F.3d 515, 521

(7th Cir. 2007); *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (Ill. 1992); *accord McCoy*, 495 F.3d at 521; *Hiatt*, 26 F.3d at 767.[2] As noted above, Shade Tree contests Clark's ability to prove causation.

Clark has not presented enough evidence for a reasonable jury to find his effective discharge was causally connected to his workers' compensation claim. It is undisputed that he was a good employee for Shade Tree. However, his four-year history of syncopal episodes, one of which caused a vehicle accident, presented a legitimate safety concern for Shade Tree. There is no way a reasonable jury could find Shade Tree's demand for reasonable assurances that Clark would not pass out again was invalid. Furthermore, the evidence shows that the policy of requiring a physician's assurance was implemented in 2004 in response to another employee's syncopal episode and was initially applied to Clark the day of his accident at a time when he appeared uninjured and therefore unlikely to file a workers' compensation claim. This procedure simply could not have been applied to Clark because he filed or was likely to file a workers' compensation claim.

There is also no evidence from which a reasonable jury could find the policy was applied to Clark especially strictly because he filed a workers' compensation claim. The evidence shows

---

[2]There has been some dispute about whether a plaintiff may use the indirect burden-shifting method approved in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to withstand summary judgment on a workers' compensation retaliatory discharge claim which finds itself in federal court on the basis of diversity jurisdiction. *McCoy*, 495 F.3d at 521. However, that matter was settled by *Gacek v. American Airlines, Inc.*, 614 F.3d 298 (7th Cir. 2010), which held that the *McDonnell Douglas* burden-shifting mechanism was not available in such a case. *Id.* at 303.

Baker was the Shade Tree employee who made the decision about whether Clark's doctors' notes satisfied the company's policy. Yet there is no evidence Baker personally knew about Clark's workers' compensation claim until Clark filed a grievance complaining of retaliatory discharge in early October, after Baker found Clark's doctors' notes from September 10, 19 and 28 (assuming it received all those notes) insufficient to allow him to return to work on October 1, 2007. It is true that notice of Clark's workers' compensation claim was faxed to Shade Tree on September 11, 2007, but no evidence suggests Baker knew of that fax. It is axiomatic that before an employer can retaliate against an employee for exercising his right to file a workers' compensation claim, he must know that the employee has or is likely to pursue workers' compensation remedies. *See Burgess v. Chicago Sun-Times*, 476 N.E.2d 1284, 1287 (Ill. App. Ct. 1985). There is no evidence Baker knew of Clark's claim when he refused to allow him back to work.

It is true that Baker applied the passing-out policy strictly against Clark and possibly even unreasonably, but there is nothing unlawful about that in the context of at-will employment.[3] It is only unlawful if he did so *because Clark filed a workers' compensation claim*, and the only evidence of causation is the sequence of relevant events: Clark filed his claim on September 10, 2007, and he was not allowed to come back to work when released by multiple doctors three weeks later on October 1, 2007. However, unless extremely suspicious, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). The circumstances in

---

[3]The Court does not intend to express any opinion on the merits of any potential claim Clark might have under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*.

7

this case do not indicate suspicious timing. On the contrary, they suggest an employer who was afraid to let an employee with a four-year history of passing out into a dangerous situation where he could place himself and others at risk, even where that risk could be avoided by allowing the worker to rest or keep hydrated. Not a shred of evidence exists to lead a reasonable jury to conclude Shade Tree did not act solely out of safety concerns, as rational or irrational as they may have been.

There is no evidence from which a reasonable jury could find Shade Tree's proffered reason for not allowing Clark to return to work was a pretext. "A pretext . . . is a deliberate falsehood. . . . An honest mistake, however dumb, is not [a pretext], and if there is no doubt that it is the real reason it blocks the case at the summary-judgment stage. " *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). Here, there is no evidence from which a reasonable jury could disbelieve that Shade Tree's safety concerns, whether justified or not, were the real reason for not allowing Clark to come back to work.

Clark relies on a handful of circumstances to show Shade Tree's proffered reason was a pretext. For example, he notes that it allowed its vehicles to run on worn tires, it failed to consult its workers' compensation nurse about Clark's fitness for work, and some of its supervisors made statements to the effect that employees who filed workers' compensation claims were not allowed to return to work. The first factor is irrelevant. There is no evidence of the level of danger presented by the worn tires, and it is unreasonable to suggest that tolerating tire-related dangers means Shade Tree was not concerned with other safety hazards. Dangers come in all shapes and sizes, and the acceptance of one type does not reasonably suggest concern for other types is a sham. The failure to consult a nurse where there are three doctors' opinions is likewise irrelevant, and the last circumstance is belied by the fact that Clark was allowed to

return to work after filing a workers' compensation claim earlier in the summer.

Clark has not carried his burden of presenting evidence of a causal connection between Shade Tree's failure to allow him back to work and his filing a workers' compensation claim, an essential element of his retaliatory discharge claim.

**IV.    Conclusion**

For the foregoing reasons, the Court **GRANTS** Shade Tree's motion for summary judgment (Doc. 27) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  April 15, 2011**

s/ J. Phil Gilbert<br>
**J. PHIL GILBERT**<br>
**DISTRICT JUDGE**